IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SHELLIE R. NELSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No: 7:15-cv-573 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION[2]

Plaintiff Shellie R. Nelson ("Nelson"), proceeding *pro se*, challenges the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Nelson asserts that the Administrative Law Judge ("ALJ") erred by concluding that she did not have a mental or physical impairment that rendered her disabled under the Act. Specifically, Nelson asserts that her diagnosis of Cowden Syndrome and anxiety are severe impairments that prevent her from working.[3] I conclude that the ALJ failed to properly account for Nelson's moderate impairment with concentration, persistence and pace, and thus the decision is not supported by substantial evidence. Consequently, I **DENY** the Commissioner's Motion for Summary Judgment, and **REVERSE** and **REMAND** this matter for further administrative consideration consistent with this opinion. Dkt. No. 18.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, I substitute Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this suit.

[2] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

[3] Neither Nelson nor the Commissioner requested oral argument in this case. To the extent Nelson's brief requests oral argument, I find that a hearing will not aid in the decisional process, and is thus unnecessary.

1

## **STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Nelson failed to demonstrate that she was disabled under the Act.[4] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d. at 189. Similarly, I find that remand is appropriate

---

[4] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2).

2

Case 7:15-cv-00573-RSB    Document 22    Filed 02/28/17    Page 2 of 10    Pageid#: 846

here because the ALJ's opinion leaves the court to guess at how he reached his conclusions regarding Nelson's RFC.

## CLAIM HISTORY

Nelson filed for SSI on October 18, 2011, claiming that her disability began on November 4, 2010. R. 266–74. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 100–04, 108–10. On December 5, 2013 and April 21, 2014, ALJ Robert S. Habermann held hearings to consider Nelson's disability claim. R. 38–77. Nelson was represented by an attorney at the hearing, which included testimony from vocational expert Gerald Wells. Id.

On May 1, 2014, the ALJ entered his decision analyzing Nelson's claim under the familiar five-step process[5] and denying her claim for benefits. R. 16–28. The ALJ found that Nelson suffered from the severe impairments of status-post thyroid, renal, and colon cancer; status-post surgeries and residual effects; thyroid disorder, status-post thyroidectomy; ovarian cyst, status-post removal; Cowden syndrome; anxiety disorder; and obesity. R. 18. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 18–20. The ALJ further found that Nelson retained the RFC to perform light work, except that she can frequently push and pull; cannot climb ladders, ropes, and scaffolds or work around unprotected heights; can occasionally crawl or climb ramps and stairs; and can frequently kneel, crouch, stoop, and balance. R. 20. The ALJ also limited Nelson

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

3

to unskilled work. Id.

The ALJ determined that Nelson could not return to her past work of modification dispatcher (R. 26), but that she could perform other work that exists in significant numbers in the national economy, such as office helper, mailroom clerk and dining room attendant. R. 27. Thus the ALJ concluded that Nelson was not disabled. Id. On August 26, 2015 the Appeals Council denied Nelson's request for review (R. 1–4), and this appeal followed.

## ANALYSIS

### Physical Impairments

Nelson suffers from Cowden Syndrome, a disorder characterized by multiple noncancerous, tumor-like growths and an increased risk of developing certain cancers, including breast cancer, thyroid cancer, cancer of the endometrium, colon cancer, kidney cancer and melanoma. See Genetics Home Reference, a service of the National Library of Medicine, Cowden Syndrome, https://ghr.nlm.nih.gov/condition/cowden-syndrome. Nelson has undergone multiple surgeries to remove tumors or polyps, including a tumor from her colon (November 2010), polyps from her colon (June 2011); lesion from her kidney (October 2011); removal of a fallopian tube and ovary (August 2012); and a thyroidectomy (December 2013). Nelson was also diagnosed with polycystic ovarian syndrome in October 2010, and suffers from gastroesophageal reflux disease and chronic obstructive sleep apnea.

The record contains three medical opinions with regard to Nelson's physical functional capacity. On December 8, 2011, Richard Surrusco, M.D., reviewed Nelson's records and determined that she could perform a range of light work, specifically, lifting 20 pounds occasionally and 10 pounds frequently; standing and walking 4 hours in an 8 hour workday; sitting for 6 hours in an 8 hour workday; unlimited pushing and pulling; occasional climbing ramps and stairs, balancing, stooping, kneeling and crouching, and never crawling or climbing

4

ladders, ropes or scaffolds. R. 82–83. On May 24, 2012, Joseph Duckwall, M.D., reviewed Nelson's records and agreed with Dr. Surrusco's findings. R. 94–95.

The ALJ gave Drs. Surrusco and Duckwall's opinions "some" weight and adopted their opinions as to Nelson's restrictions on lifting and carrying, but disagreed with their recommended limitations as to Nelson's ability to stand, walk and postural limitations, noting that the medical evidence shows no objective abnormalities regarding Nelson's back or bilateral lower extremities. R. 26.

On July 21, 2013, Edwin Cruz, M.D., examined Nelson's medical records and provided a written medical opinion to the ALJ as to Nelson's functional capacity. R. 582. Dr. Cruz determined that Nelson was unable to partake in gainful employment after her surgeries for a reasonable period of recovery time. R. 583. Dr. Cruz determined that Nelson was under temporary disability due to her surgeries and recovery periods only, and that there is no medical evidence that would indicate that her renal cancer, colon cancer or impaired renal function would recur. Id. Dr. Cruz found that Nelson can lift/carry over 50 pounds frequently, and less than 50 pounds continuously; sit and stand for 4 hours at a time up to 8 hours a workday, and walk for 2 hours at a time, up to 8 hours a workday; frequently push and pull; never climb ladders or scaffolds, occasionally crawl and climb ramps or stairs, and never be exposed to unprotected heights. R. 587–92.

The ALJ gave little weight to Dr. Cruz's finding that Nelson could perform heavy exertional work, finding that she was instead limited to light work. R. 23. The ALJ gave great weight to the portion of Dr. Cruz's opinion dealing with postural limitations. R. 23. The ALJ concluded that Nelson is capable of performing a range of light work, that she can frequently push, pull, kneel, crouch, stoop and balance; occasionally crawl or climb ramps and stairs, and never climb ladders, ropes, scaffolds or work around unprotected heights. R. 20.

Substantial evidence supports the ALJ's conclusion that despite her physical

5

impairments, Nelson is capable of performing a range of light work. The disabling effects of Nelson's various surgeries were temporary in nature. She did not require long-term treatment, such as chemotherapy or radiation, and was prescribed pain medication such as Lortab for post-surgical pain. Nelson's physical complaints, aside from her surgeries and subsequent recoveries, consisted mainly of GERD symptoms or headaches. Nelson complained of obstructive sleep apnea symptoms only one time, in July 2013. R. 659–63. Nelson did not complain of other ongoing disabling symptoms to her treating physicians, and none of Nelson's physicians placed long-term limitations on her physical activity. The ALJ properly considered and weighed the opinions of the reviewing medical experts and adopted the findings that he found supported by the record to arrive at an RFC. Thus, substantial evidence supports the ALJ's conclusion that Nelson is capable of performing a range of light work.[6]

**Mental Impairments**

Nelson suffers from anxiety, which she reported to her treating physicians on several occasions. R. 551, 659, 674. Nelson received no treatment for her anxiety until she was prescribed anti-anxiety medication in November 2013. R. 689. Nelson had not been treated by a mental health professional prior to the administrative hearing, and no mental health experts reviewed her records and rendered any opinions as to her mental functional capacity. Nelson testified at the administrative hearing that her anxiety affects her ability to concentrate. R. 54, 64, 66.

---

[6] Nelson submitted additional medical records to the court dated August 3, 2016 (reflecting that Nelson is under the care of Robert Devereaux, M.D. for anxiety and depression) (Dkt. No. 20-1), and November 7, 2016 (reflecting that Nelson suffers from Cowden syndrome and was seen on November 7, 2016 for surgical evaluation of dysphagia) (Dkt. No. 21). A claimant seeking a remand on the basis of new evidence must show that the evidence is new and material and must establish good cause for failing to present the evidence earlier. See Wilkins v. Sec'y of Health & Human Servs., 953 F.2d 93, 96 n. 3 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative; it is material if there is a reasonable possibility it would have changed the outcome of the Commissioner's decision. Id. These records reflect ongoing treatment by Nelson, and do not relate back to the time period prior to the ALJ's May 1, 2014 decision. Further, the content of the records does not conflict with the evidence before the ALJ, thus there is no basis to believe that these records would change the Commissioner's decision in this case.

6

When considering whether Nelson's impairments met or equaled a listing, the ALJ determined that Nelson had no restriction with activities of daily living, mild difficulties with social functioning, and moderate difficulties with concentration, persistence and pace. R. 19. The ALJ noted that Nelson testified that she has anxiety due to her medical problems and it affects her ability to concentrate. Id. The ALJ also noted that Nelson took medication for anxiety, but did not complain of it very often, and that there is no evidence of marked problems with concentration, persistence or pace in the record. Id.

In step four of his analysis, the ALJ recited Nelson's testimony that she has anxiety from thinking about her sickness a lot, which affects her concentration and focus. R. 21. With regard to her mental health symptoms and treatment, the ALJ noted that Nelson "rarely complained of any mental symptoms; she only mentioned anxiety a few times since the alleged onset date." R. 24. The ALJ acknowledged that Nelson took medication for anxiety, but also noted that Nelson never went to counseling or a mental health specialist for her anxiety. R. 23–25. There are no opinions from mental health or medical professionals in the record.

When presenting hypothetical questions to the vocational expert, the ALJ included a limitation of unskilled work. R. 73–74. The ALJ referenced Nelson's depression, anxiety and inability to sleep to the vocational expert, but made no mention of an impairment with concentration, persistence or pace. The vocational expert found that there were jobs within the light exertion, unskilled category that Nelson could perform.

In Mascio v. Colvin, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that

7

"[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. Although the Fourth Circuit noted that the ALJ's error in Mascio might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that without such an explanation, remand was necessary. Id.

Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. 780 F.3d 638. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. The ALJ's responsibility to highlight the evidence of record that supports his conclusion was further emphasized recently in Monroe v. Colvin, 826 F.3d 176, (4th Cir. 2016) where the court found that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically apply the law to the record. Id.

Here, the ALJ provided no reasoning or explanation for how Nelson's moderate difficulty with concentration, persistence and pace is adequately accommodated by a limitation to unskilled work, and it is not clear from the record what evidence the ALJ relied upon to reach that conclusion. See Mascio, 780 F.3d 638. The ALJ discussed Nelson's infrequent complaints of anxiety and failure to seek treatment with a mental health professional, but did not relate how these findings eroded his prior conclusion that Nelson had a moderate impairment with concentration, persistence and pace. The ALJ also examined Nelson's reported daily activities of lying down for two hours a day, caring for herself, preparing her own meals, shopping and occasionally taking a 10 minute walk (R. 21), none of which discount her alleged difficulty with concentration, persistence or pace. Further, there are no opinions in the record from mental

8

health professionals upon which the ALJ could rely to find that Nelson is capable of performing unskilled work despite her moderate impairment with concentration, persistence and pace.

Overall, there is no discussion in the ALJ's decision to support the conclusion that, despite her moderate limitation in concentration, persistence, or pace, Nelson is capable of performing the basic mental demands of unskilled work. Thus, as in Mascio, this court is "left to guess about how the ALJ arrived at his conclusions." 780 F.3d at 637. Given Nelson's minimal mental health complaints and treatment, it is likely that the ALJ can explain why Nelson's moderate limitations with maintaining concentration, persistence, and pace do not require corresponding restrictions in her RFC. His failure to do so in this case, however, is reversible error and requires remand. See id.; Nichols v. Colvin, No. 7:15-cv-44, 2016 WL 4529780, at *3–*4 (W.D. Va. Aug. 3, 2016); White v. Colvin, No. 4:14-CV-00018, 2015 WL 1958885, at *12 (W.D. Va. May 1, 2015). Regardless of evidence contained in the record, the ALJ must sufficiently articulate his findings such that the district court can undertake a meaningful review. Monroe v. Colvin, 826 F.3d at 189 (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)) ("a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence that ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence). Thus, this matter should be remanded with instructions to the Commissioner to properly account for Nelson's moderate limitation with concentration, persistence and pace.

9

## CONCLUSION

For the foregoing reasons, I **DENY** the Commissioner's Motion for Summary Judgment (Dkt. No. 18), **GRANT in part** Nelson's motion for summary judgment (Dkt. No. 15), and **REVERSE** and **REMAND** this case to the Commissioner under sentence four of 42 USC § 405(g).

Entered: February 28, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

10

Case 7:15-cv-00573-RSB   Document 22   Filed 02/28/17   Page 10 of 10   Pageid#: 854